UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:22-cv-22-KDB
5:20-cr-69-KDB-DCK-1

| | |
|---|---|
| LUCIA CARBAJAL AVILA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's pro se 28 U.S.C. § 2255 Motion to Vacate Sentence, (Doc. No. 1). Also pending is the Respondent's Motion to Seal, (Doc. No. 5).

I.  BACKGROUND

Petitioner was charged in the underlying criminal case with: methamphetamine conspiracy in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count One); possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine and aiding and abetting the same in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2 (Count Two); and possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count Three). (5:20-cr-69 (CR) Doc. No. 9) (Bill of Information); see (CR Doc. No. 14) (Waiver of Indictment).

Petitioner pleaded guilty to Counts One, Two, and Three pursuant to a written Plea Agreement in exchange for charging concessions, for example, not charging Petitioner with a firearm violation under 18 U.S.C. 924(c) or a drug violation in violation under 21 U.S.C. § 860a.

1

(CR Doc. No. 11 at ¶¶ 1, 2). The Plea Agreement provides that Petitioner's breach of the agreement would "permit the United States to proceed on any dismissed, pending, superseding or additional charges…." (Id. at ¶ 4). Petitioner admitted that she is, in fact, guilty as charged in Counts One, Two, and Three. (Id. at ¶ 1). The Plea Agreement explains that the statutory minimum and minimum sentences for each count are: "[a] sentence of not less than ten (10) years nor more than life imprisonment, and/or a $10,000,000 fine, and at least five (5) years [of] supervised release…." (Id. at ¶ 5).

The parties agreed to jointly recommend that: the amount of a mixture and substance containing a detectable amount of methamphetamine that was known to or reasonably foreseeable by Petitioner was "in excess of 50 kilograms of methamphetamine;" the Petitioner "should receive a 2-level enhancement for maintaining a premises for distributing controlled substances pursuant to U.S.S.G. § 2D1.1(b)(1); the Petitioner's acceptance of responsibility is timely for purposes of U.S.S.G. § 3D1.1(b), if applicable; and the career offender or armed career criminal guideline may be used to determine the sentence, if applicable. (Id. at ¶ 8). The parties reserved the right to advocate whether Petitioner should receive a 2-level weapon enhancement pursuant to U.S.S.G. § 2D1.1(b)(1). (Id.). The parties also remained free to argue their respective positions regarding other specific offense characteristics, cross-references, special instructions, reductions, enhancements, and adjustments, as well as departures or variance from the applicable guideline range at sentencing. (Id.). The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum and would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw her

plea as a result of the sentence imposed. (Id. at ¶ 7).

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Petitioner read and understood the Factual Basis filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. (Id. at ¶ 11). The Plea Agreement further provides that the Factual Basis does not necessarily represent all conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with additional relevant facts for purposes of sentencing. (Id. at ¶ 12).

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right to: withdraw the guilty plea once the Magistrate Judge has accepted it; to be tried by a jury; be assisted by an attorney at trial; confront and cross-examine witnesses; and not be compelled to incriminate herself. (Id. at ¶¶ 13-15). The Plea Agreement acknowledges that Petitioner had discussed with defense counsel her post-conviction and appellate rights, whether there are potential issues relevant to an appeal or post-conviction action, and the possible impact of any such issue on the desirability of entering into the Plea Agreement. (Id. at ¶ 16). Petitioner expressly waived the right to contest her conviction and sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. (Id. at ¶ 17). The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." (Id. at ¶ 28).

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> From at least as early as in or about March 2020 to on or about August 9, 2020, in Wilkes County … and elsewhere, the defendant, LUCIA CARBAJAL AVILA, conspired with others to distribute 500 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a), 84l(b)(l)(A), and 846.
>
> On or about August 7, 2020, in a vehicle in Wilkes County … and elsewhere, the defendant, LUCIA CARBAJAL AVILA, did knowingly and intentionally possess with intent to distribute five hundred (500) grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(l) and 841(b)(l)(A), and did aid and abet the same, in violation of Title 21, United States Code, Section 2.
>
> On or about August 7, 2020, in a residence in Wilkes County … and elsewhere, the defendant, LUCIA CARBAJAL AVILA, did knowingly and intentionally possess with intent to distribute five hundred (500) grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

(CR Doc. No. 10 at 1-2) (paragraph numbers omitted).

On September 8, 2020, a Rule 11 hearing came before the Honorable David C. Keesler, United States Magistrate Judge. (CR Doc. No. 15). Petitioner stated, under oath, that she received a copy of the Information and discussed it with counsel, and fully understood the charge and the maximum and minimum penalties that could apply to her. (Id. at 1). Petitioner agreed that she understood that pleading guilty may cause her to be deprived of certain civil rights, and that she discussed with counsel: how the sentencing guidelines may apply to her case; that the Court would not be able to determine the sentence until a PSR has been prepared and Petitioner has had an opportunity to comment on it; she may receive a sentence that is different from that called for by the guidelines; and she has no right to withdraw the plea even if she receives a sentence more severe than she expects. (Id. at 2). Petitioner acknowledged the rights she was waiving by pleading guilty, including the waiver of her appeal and post-conviction rights, and stated her understanding

4

that the case would proceed directly to sentencing. (Id. at 2-3).

The Plea Agreement was summarized in open court. (Id. at 3). Petitioner confirmed that she understood and agreed with the terms of the Plea Agreement, including the waiver of her appellate and post-conviction rights. (Id.). Petitioner stated that she read the Factual Basis, understood it, and agreed with it. (Id.). Petitioner stated that nobody threatened, intimidated, or forced her to plead guilty, and that nobody made any promises of leniency or a light sentence other than the terms of the Plea Agreement. (Id.). Petitioner had enough time to discuss any possible defenses with her lawyer and was satisfied with counsel's services. (Id.).

The Presentence Investigation Report's (PSR) scored the base offense level as 38 because the violation of § 841(a)(1) involved 45 kilograms or more of methamphetamine pursuant to U.S.S.G. § 2D1.1(a)(5). (CR Doc. No. 22 at ¶ 35). Two levels were added because a dangerous weapon (including a firearm) was possessed pursuant to § 2D1.1(b)(1), and two more levels were added because Petitioner maintained a premises for the purpose of manufacturing or distributing a controlled substance pursuant to U.S.S.G. § 2D1.1(b)(12). (Id. at ¶¶ 36, 36). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 39. (Id. at ¶¶ 43-45). Petitioner had zero criminal history points a criminal history category of I. (Id. at ¶¶ 49-50). The resulting advisory guidelines range was 262 to 327 months of imprisonment. (Id. at ¶ 75).

Defense counsel filed PSR objections challenging, *inter alia*, the two-level firearm enhancement, and arguing that Petitioner should receive a downward departure or variance. (CR Doc. No. 21).

A sentencing hearing came before the Court on March 4, 2021. The Court adopted the PSR without change, varied below the mandatory minimum, and sentenced Petitioner to 84 months' imprisonment for each count, concurrent, in a Judgment entered on March 6, 2021. (CR Doc. No.

5

32); see (CR Doc. No. 33) (Statement of Reasons). The Petitioner did not appeal.

Petitioner filed the instant *pro se* § 2255 Motion to Vacate on February 12, 2022.[1] (Doc. No. 1). She argues that counsel was ineffective for (restated and renumbered): (1) inadequately advising her about the evidence, sentencing issues, and rushing her to plead guilty, which rendered the guilty plea involuntary; and (2) misadvising her about appealing. (Doc. No. 1). The Government filed a Response arguing that the Motion to Vacate be dismissed or denied because Petitioner has failed to demonstrate that counsel provided her constitutionally deficient advice in connection with her guilty plea or about whether to pursue an appeal. (Doc. No. 6). The Government has moved to seal the Response because it refers to documents that contain confidential information. (Doc. No. 5). Petitioner has not replied to the Government's Response and the time to do so has expired. See (Doc. No. 2).

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that her "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

**III.    DISCUSSION**[2]

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for her defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced her. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

**(1) Involuntary Plea**

Construing the Motion to Vacate liberally, Petitioner appears to argue that her guilty plea

---

[2] Petitioner's claims have been liberally construed, restated, and renumbered. Any argument or subclaim which is not specifically addressed in this Order, has been considered and rejected.

was involuntary because counsel: rushed her to plead guilty; did not fully explain the evidence against her; and did not adequately explain sentencing points.

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters her plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007). Put differently, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

First, the Petitioner claims that: her "attorney did not give [her] time to make [her] decision;" he "push[ed] [her]" to plead guilty the first time they met; and one week was not enough time to make a decision about pleading guilty.[3] (Doc. No. 1 at 4). Petitioner has failed to demonstrate that counsel performed deficiently by urging her to swiftly agree to plead guilty, which was as a reasonable strategic decision that resulted in fewer charges, a reduction in the offense level for acceptance of responsibility, and other benefits. See generally Strickland, 466

---

[3] Petitioner was arrested on related state charges on August 8, 2020 and signed the Plea Agreement on August 16, 2020. See (Doc. No. 1 at 4); (CR Doc. No. 22 at 2); (CR Doc. No. 11 at 7).

8

U.S. at 681 (counsel's reasonable strategic decisions are entitled to deference); (Doc. No. 4 at 8). Further, the Petitioner's contention that she did not have enough time to make her decision to plead guilty is conclusively refuted by the record. She stated under oath at the Rule 11 hearing that: she understood the charges and consequences of the plea; the plea was freely and voluntarily entered; she had enough time to discuss with her attorney any possible defenses to the charges; and she was satisfied with counsel's services. (CR Doc. No. 15 at 3). Her present self-serving and unsupported claims to the contrary are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Second, Petitioner claims that counsel "did not explain on full detail the evidence against [her]…" (Doc. No. 1 at 4). This claim is too vague and conclusory to support relief insofar as Petitioner fails to identify the evidence that counsel allegedly failed to discuss with her. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (vague and conclusory allegations in a § 2255 petition may be disposed of without further investigation by the district court). Further, this claim is conclusively refuted by the record. She stated under oath at the Rule 11 hearing that she had enough time to discuss any possible defenses with counsel, that she understood the charges, and that she is guilty of Counts One, Two, and Three. (CR Doc. No. 15 at 3). Any suggestion that she was confused about the charges or the evidence is further belied by the facts set forth in the Factual Basis, which she admits is true and correct. (Id.); (CR Doc. No. 11 at ¶¶ 1, 2); (CR Doc. No. 10).

9

Her present claims to the contrary are rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22.

Third, Petitioner contends that counsel "did no[t] explain to [her] about points and how that was going to affect … [her] sentence…." (Doc. No. 1 at 4). This claim is too vague and conclusory to support relief insofar as the Petitioner fails to identify the allegedly deficient or incomplete advice that counsel provided with regards to sentencing. See Dyess, 730 F.3d at 359. Further, this claim is conclusively refuted by the record. Petitioner stated under oath and the Rule 11 hearing that she understood her sentencing exposure, and that counsel had discussed with her how the U.S. Sentencing Guidelines may apply to her case. (CR Doc. No. 11 at ¶¶ 5, 7, 8). She further agreed in the Plea Agreement that: the amount of methamphetamine that was known to or reasonably foreseeably by her for purposes of the U.S. Sentencing Guidelines was in excess of 50 kilograms; a two-level premises enhancement would apply; the parties were free to advocate whether a two-level firearm enhancement would apply; her timely acceptance of responsibility may qualify her for a three-level reduction in the offense level; the parties remained free to argue other sentencing factors; and a sentence higher than she anticipated would not permit her to withdraw her plea. (Id. at ¶¶ 7, 8); (CR Doc. No. 15 at 2). Her present claim that counsel did not adequately discuss sentencing with her is rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22.

Moreover, these claims of ineffective assistance of counsel are deficient because Petitioner has failed to demonstrate prejudice. She does not assert that she would have proceeded to trial but for counsel's allegedly deficient performance. See Hill, 474 U.S. at 59. Nor would it have been rational for Petitioner to proceed to trial in light of the strong evidence of her guilt as set forth in the Factual Basis and PSR, and the benefits of pleading guilty including the Government's

charging concessions and a three-level reduction for acceptance of responsibility. Accordingly, the Petitioner's claims that ineffective assistance of counsel rendered her guilty plea involuntary are denied.

**(2) Appeal**

Petitioner claims that, on "[t]he day of [her] sentence … [she] ask[ed] [her] attorney [that she] want[ed] to appeal the decision [be]cause [she got] much more time [than] what he said [she] was going to get, and [she] was told appeal was something dum[b] to do because they could modify [her] sentence and give] her] even more time [than] what [she] had already been sentence[d] to and [she] believe[d] that at the moment." (Doc. No. 1 at 4).

Strickland applies in the context of appellate representation. Counsel must file a notice of appeal when instructed by the client to do so. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000); see Garza v. Idaho, 139 S.Ct. 738 (2019) (applying Flores-Ortega in appeal waiver cases). Even if a client does not expressly request an appeal, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds to appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480; United States v. Cooper, 617 F.3d 307 (4th Cir. 2010). Dereliction of either of these duties constitutes deficient performance. See Flores-Ortega, 528 U.S. 477, 480; Cooper, 617 F.3d at 313. The term "consult," means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478. If counsel has consulted with the defendant, counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. Id. A defendant establishes prejudice by demonstrating a reasonable

11

probability that she would have filed an appeal "but for" counsel's failure to file or consult. Id. at 484. A defendant need not show that her appeal has merit. Id. at 486.

Here, Petitioner reasonably demonstrated her interest in appealing by telling counsel, at sentencing, that she wanted to appeal because the sentence was higher than she had expected. See United States v. Malone, 442 F. App'x 864 (4th Cir. 2011) (defendant reasonably demonstrated his interest in appealing by telling counsel directly after sentencing that he wanted to appeal). However, the Plea Agreement provides that Petitioner had discussed appellate issues with counsel before entering her plea. (CR Doc. No. 11 at ¶ 16). She further admits in the Motion to Vacate that counsel discussed the matter with her after she expressed dissatisfaction with her sentence by explaining that an appeal may result in a higher sentence, and that she acquiesced to counsel's advice not to appeal. (Doc. No. 1 at 4). She has failed to demonstrate that counsel's consultation was deficient in any way, or that counsel disregarded her express instructions after the consultation. See Flores-Ortega, 528 U.S. at 478. Moreover, Petitioner has failed to establish prejudice insofar as she fails to allege that she would have appealed but for counsel's allegedly deficient consultation. See id. at 484 ("If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel has not deprived him of anything, and he is not entitled to relief."). Therefore, the Petitioner's claim that counsel was ineffective with regards to appealing is denied.

**(3) Motion to Seal**

Finally, the Respondent asks the Court to seal the unredacted Response. (Doc. Nos. 4, 5).

There is a "presumption under applicable common law and the First Amendment that materials filed in this Court will be filed unsealed." LCvR 6.1(a); see Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988) (First Amendment right to access to court

proceedings includes criminal and civil cases). However, a court has authority to seal documents before it based upon the court's inherent supervisory authority over its own files and records. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978). The denial of access to documents under the First Amendment must be necessitated by a compelling government interest that is narrowly tailored to serve that interest. See In re Washington Post Co., 807 F.2d 383, 390 (4th Cir. 1986); In re State-Record Co., Inc., 917 F.2d 124, 127 (4th Cir. 1990). Courts have noted safety concerns as overriding interests that outweigh the presumption of public access to judicial records. See Presley v. Georgia, 558 U.S. 209 (2010). Before sealing judicial records, a court must identify the interest that overrides the public's right to an open court, and articulate supporting findings specific enough that a reviewing court can determine whether the order was properly entered. See Press–Enterprise Co. v. Superior Ct. of Ca., 464 U.S. 501, 510 (1984). When addressing motions to seal, the Court must consider alternatives to sealing and specify whether the sealing is temporary or permanent and also may redact such orders in its discretion. LCvR 6.1.

Here, the Government explains that the unredacted Response should be sealed because it refers to sealed documents in the criminal case. The interest in maintaining those documents' confidentiality is compelling. Further, the Government has filed a redacted version of the Response that is publicly available so that sealing the unredacted Response is narrowly tailored to serve the purposes of maintaining the confidentiality of sensitive information, while also serving the public's interest in an open court. (Doc. No. 6). The Motion will, therefore, be granted and the unredacted Response will be permanently sealed.

### IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed and denied and the

Motion to Seal is granted.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (Doc. No. 1) is **DISMISSED** and **DENIED**.

2. Respondent's Motion to Seal (Doc. No. 5) is **GRANTED**.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

4. The Clerk is instructed to close this case.

Signed: June 2, 2022

Kenneth D. Bell
United States District Judge